**VIRGINIA:**

## IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY

**JOHN MUTTER**
4359 Snowhill Drive,
Gainesville, VA 20155

    Plaintiff

v.

Case No.: CL14-1986

**LOWE'S HOME CENTERS, LLC**
Serve: Corporation Service Company,
    Registered Agent
    Bank of America Center, 16th Floor
    1111 East Main Street
    Richmond, VA 23219

And

**LOWE'S COMPANIES, INC.**
Serve: Secretary of the Commonwealth
    Corporation Service Company,
    Registered Agent,
    327 Hillsborough Street
    Raleigh, NC 27303

And

**LOWE'S HOME CENTERS, INC.**
Serve: Corporation Service Company,
    Registered Agent
    1111 East Main Street
    Richmond, VA 23219

And

**LF, LLC**
Serve: Secretary of the Commonwealth
    Corporation Service Company,
    Registered Agent
    327 Hillsborough Street
    Raleigh, NC 27603

And

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-1-



**EXHIBIT**

A

LOWE'S HOME CENTERS, INC., #1870 )
T/A LOWE'S OF GAINESVILLE )
Serve: Manager )
   13000 Gateway Center Drive )
   Gainesville, VA 20155 )
            )
And )
            )
LOWE'S OF GAINESVILLE, No. 1870 )
Serve: Manager )
   13000 Gateway Center Drive )
   Gainesville, VA 20155 )
            )
    Defendants )
            )

## COMPLAINT

COMES NOW Plaintiff, John Mutter (hereinafter referred to as "Mr. Mutter"), by his

counsel, Demetrios C. Pikrallidas, and files this Complaint against Lowe's Home Centers, LLC,

Lowe's Companies, Inc., Lowe's Home Centers, Inc., LF, LLC, Lowe's Home Centers, Inc.

#1870 T/A Lowe's of Gainesville and Lowe's of Gainesville No. 1870, jointly and severally,

and states as follows:

## PARTIES

1.  Mr. Mutter, is a 62 year old man who is a resident of Virginia, residing at 4359

Snowhill Drive, Gainesville, VA 20155.

2.  Defendant Lowe's Home Centers, LLC is a North Carolina Limited Liability

Company which has a certificate of authority to transact business in the Commonwealth of

Virginia; Defendant Lowe's Companies, Inc., is a North Carolina Corporation; Lowe's Home

Centers, Inc. is a North Carolina Corporation; LF, LLC is a Delaware Limited Liability

Company; and Lowe's Home Centers, Inc. #1870 T/A Lowe's of Gainesville and Lowe's of

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELLORS
AT LAW
LAWYERS ROW
10625 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL (703) 267-2600
FAX (703) 273-8046

-2-

Gainesville No. 1870, based upon information and belief, are fictitious names identifying the Lowe's retail business located at 13000 Gateway Center Drive, Gainesville, VA 20155 and designated store number 1870, (collectively referred to hereinafter as "Lowe's") conduct business in, among other places, Gainesville, in Prince William County, Virginia.

3.   Defendant Lowe's operates, conducts, controls and otherwise transacts business within the Commonwealth of Virginia, by, through, and/or utilizing certain property, equipment and/or labor in such a manner as to conduct a retail business enterprise, located at 13000 Gateway Center Drive, Gainesville, Virginia 20155, identified as Store #1870.

### JURISDICTION AND VENUE

4.   Jurisdiction is proper pursuant to § 17.1-513, §8.01-312 and § 8.01-328.1(A) of the Code of Virginia, as Mr. Mutter is a resident of the Commonwealth; Defendant regularly conducts business within the Commonwealth; and the injuries complained of occurred within Prince William County, Virginia.

5.   Venue is proper in this Court pursuant to the provisions of § 8.01-262(4) of the Code of Virginia.

### BACKGROUND FACTS

6.   On or about March 28, 2012, at approximately 12:45 p.m., Mr. Mutter was shopping at the Lowe's retail store located at 13000 Gateway Center Drive, Gainesville, Prince William County, Virginia 20155, known as Store #1870 (hereinafter "Lowe's).

7.   Mr. Mutter entered the Garden Center portion of Lowes and began picking up bags of mulch and placing them onto his shopping cart. The bags of mulch were taken from a low pile of stacked bags nearest to the shopping aisle.

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-3-

8.     As Mr. Mutter was loading bags of mulch, suddenly and without notice or warning, bags of mulch that had been negligently stacked and that had been negligently stacked in an unreasonably high and dangerously stacked pile, fell from behind him, and struck and knocked him to the ground and into the side of his cart.

9.     Mr. Mutter immediately screamed and became immobilized from the excruciating pain he suffered in his right leg.

10.     An ambulance was called to Lowe's, and Mr. Mutter was rushed to the Emergency Department of the Prince William County Hospital.

11.     As a result of being hit and knocked down by the falling bags of mulch, and as a direct and proximate result of the Defendants' negligence, Mr. Mutter suffered , and will continue to suffer, the following serious and permanent injuries: a grade 1 open mid-shaft fracture of his right femur which tore the vastus lateralis muscle and surrounding muscles; hip and knee pain; a broken interlocking screw; and a six percent (6%) permanent disability of the right lower leg, all of which have required, or will require surgery, extensive hospital and home care, and therapy. In addition, Mr. Mutter has been prevented from transacting his business and his daily affairs; has lost and will continue to lose wages; has suffered and will continue to suffer great pain of body and mind; has incurred and will continue to incur in the future medical, hospital, doctors', therapy and related bills in an effort to be cured of said injuries, has suffered emotional distress and damage to his relationship with his wife, family, and friends.

12.     The above described incident was caused by and directly attributable to the negligent, careless and/or reckless conduct of the Defendants and without any contributory negligence on the part of Mr. Mutter. Mr. Mutter had no knowledge or warning that the

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-4-

negligently and highly stacked bags of mulch that fell on him were a danger or a risk to him before the bags of mulch fell on him.

**COUNT I**
(Negligence)

13. Plaintiff realleges and incorporates herein all allegations set forth in Paragraphs One (1) through twelve (12) of this Complaint as if set forth in full and in their entirety.

14. Defendant Lowe's occupied and maintained its premises at 13000 Gateway Center Drive, Gainesville, Virginia 20155, identified as Store #1870, as a home improvement business enterprise, which was open for the patronage of the general public, including Mr. Mutter, for the economic benefit and financial gain of Lowe's.

15. At all times material to this action, Mr. Mutter was a Business Invitee on Lowe's premises located at 13000 Gateway Center Drive, Gainesville, Virginia 20155, identified as Store #1870.

16. At all times relevant herein, Lowe's and its agents, employees, and/or servants, owed a non-delegable duty to exercise reasonable and ordinary care in the maintenance and operation of its premises, to take reasonable steps to provide for the protection of its patrons, and to use reasonable and ordinary care to keep its premises in a reasonably safe condition for Mr. Mutter and other patrons shopping at said premises, and to warn its patrons and invitees of any potential, hidden, or recognized dangers.

17. At all times relevant herein, the Defendants were responsible for the acts and/or omissions of their authorized agents, employees and/or servants working at their premises located at 13000 Gateway Center Drive, Gainesville, Virginia 20155, identified as Store #1870.

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8048

This duty included, but was not limited to, the proper supervision and training of Lowe's agents, employees and/or servants.

18.     Prior to the incident in question, the Defendants, their agents, employees, and/or servants, knew, or with reasonable diligence should have known, that the practice of negligently stacking bags of mulch, especially in unreasonably high piles, presented significant safety risks and could result in serious and permanent injuries to customers at retail establishments operated by Defendant Lowe's.

19.     Despite their knowledge of the risks posed and the severe injuries caused by negligently stacking bags of mulch and negligently stacking bags of mulch in high piles at its retail establishments, Defendant Lowe's and their agents, employees, and/or servants, negligently, recklessly, willfully, knowingly, wantonly, and in a total disregard of customer safety, continued to employ this practice.

20.     The Defendants failed to exercise reasonable care:

    a.     by negligently stacking bags of mulch into unreasonably high piles;

    b.     by failing to exercise reasonable care and caution in the maintenance of bags of mulch on their premises that were negligently stacked and/or were stacked unreasonably high;

    c.     by failing to adequately secure said bags of mulch to prevent them from falling;

    d.     by failing to properly prevent its patrons, including Mr. Mutter, from going into areas where bags of mulch were negligently stacked and/or were stacked unreasonably high;

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

e.     by failing to adequately supervise and train their agents, employees, and/or servants;

f.     by failing to adequately warn its patrons and Mr. Mutter of the danger of falling bags of mulch;

g.     by failing to take reasonable measures to avoid unreasonably high and/or negligently stacked bags of mulch from falling on its customers and on Mr. Mutter;

h.     by failing to make reasonable and periodic inspections of the area in question;

i.     in all other respects, by negligently and without due care causing unreasonably high and negligently stacked bags of mulch to fall and strike Mr. Mutter;

j.     by failing to use reasonable and ordinary care to prevent the injuries sustained by Mr. Mutter.

21.     As a direct and proximate result of Lowe's sole negligence in failing to safely and properly maintain its premises as set forth above, bags of mulch fell on Mr. Mutter. Mr. Mutter suffered, and will continue to suffer, the following serious and permanent injuries: a grade 1 open mid-shaft fracture of his right femur which tore the vastus lateralis muscle and surrounding muscles; hip and knee pain; a broken interlocking screw; and a six percent (6%) permanent disability of the right lower leg, all of which have required, or will require surgery, extensive hospital and home care, and therapy. In addition, Mr. Mutter has been prevented from transacting his business and his daily affairs; has lost and will continue to lose wages; has suffered and will continue to suffer great pain of body and mind; has incurred and will continue to incur in the

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL: (703) 267-2600
FAX (703) 273-8046

-7-

future medical, hospital, doctors', therapy and related bills in an effort to be cured of said injuries; has suffered emotional distress and damage to his relationship with his wife, family, and friends.

22.     All such losses and damages are in fact the direct and proximate result of the negligence of the Defendants without any contributory fault or negligence on the part of the Mr. Mutter contributing thereunto, directly or indirectly.

### COUNT II
### (Respondeat Superior)

23.     Plaintiff realleges and incorporates herein all allegations set forth in Paragraphs One (1) through Twenty-Two (22) of this Complaint as if set forth in full and in their entirety herein.

24.     At all relevant times herein, Defendants employed agents, employees and/or servants to work at the Lowe's retail store located at 13000 Gateway Center Drive, Gainesville, Virginia 20155, known as Store #1870.

25.     At all times relevant herein, Defendants were responsible under the doctrine of Respondeat Superior for the acts and/or omissions of their authorized agents, employees and/or servants working at the premises located at 13000 Gateway Center Drive, Gainesville, Virginia 20155, known as Store #1870.

26.     Prior to the incident in question, the Defendants, their agents, employees, and/or servants, knew, or with reasonable diligence should have known, that the practice of negligently stacking bags of mulch, especially in unreasonably high piles, presented significant safety risks and could result in serious and permanent injuries to customers at retail establishments operated by Defendant Lowe's.

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-8-

27.     Despite their knowledge of the risks posed and the severe injuries caused by negligently stacking bags of mulch and negligently stacking bags of mulch in high piles at its retail establishments, Defendant Lowe's, and their agents, employees, and/or servants, negligently, recklessly, willfully, knowingly, wantonly, and in a total disregard of customer safety, continued to employ this practice.

28.     The Defendants failed to exercise reasonable care:

a.      by negligently stacking bags of mulch into unreasonably high piles;

b.      by failing to exercise reasonable care and caution in the maintenance of bags of mulch on their premises that were negligently stacked and/or were stacked unreasonably high;

c.      by failing to adequately secure said bags of mulch to prevent them from falling;

d.      by failing to properly prevent its patrons, including Mr. Mutter, from going into areas where bags of mulch were negligently stacked and/or were stacked unreasonably high;

e.      by failing to adequately supervise and train their agents, employees, and/or servants;

f.      by failing to adequately warn their patrons and Mr. Mutter of the danger of falling bags of mulch;

g.      by failing to take reasonable measures to avoid unreasonably high and/or negligently stacked bags of mulch from falling on its customers and on Mr. Mutter;

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2000
FAX (703) 273-8046

      h.    by failing to make reasonable and periodic inspections of the area in question; and

      i.    in all other respects, by negligently and without due care causing unreasonably high and negligently stacked bags of mulch to fall and strike Mr. Mutter.

      j.    by failing to use reasonable and ordinary care to prevent the injuries sustained by Mr. Mutter.

29.    At all relevant times herein, the aforementioned agents, employees and/or servants were under Defendants' direct supervision, employ, and control when they committed the wrongful acts described herein that injured Mr. Mutter.

30.    All of said acts described herein were performed to further the interests of the Defendants, and in accordance with Defendants' instructions, training, and direction.

31.    As a direct and proximate result of Lowe's negligence in failing to safely and properly maintain its premises as set forth above, bags of mulch fell on Mr. Mutter. Mr. Mutter suffered, and will continue to suffer, the following serious and permanent injuries: a grade 1 open mid-shaft fracture of his right femur which tore the vastus lateralis muscle and surrounding muscles; hip and knee pain; a broken interlocking screw; and a six percent (6%) permanent disability of the right lower leg, all of which have required, or will require surgery, extensive hospital and home care, and therapy. In addition, Mr. Mutter has been prevented from transacting his business and his daily affairs; has lost and will continue to lose wages; has suffered and will continue to suffer great pain of body and mind; has incurred and will continue to incur in the future medical, hospital, doctors', therapy and related bills in an effort to be cured of said

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-10-

injuries; has suffered emotional distress and damage to his relationship with his wife, family, and friends.

**COUNT III**
· **(Negligent Training and Supervision)**

32.     Plaintiff realleges and incorporates herein all allegations set forth in Paragraphs One (1) through Thirty-One (31) of this Complaint as if set forth in full and in their entirety herein.

33.     The Defendant was responsible for the training and supervision of its employees at its premises located at 13000 Gateway Center Drive, Gainesville, Virginia.

34.     The Defendant had policies and procedures to prevent the types of injuries suffered by the Mr. Mutter.

35.     If the employees of the Defendant had been properly trained and/or supervised by the Defendant, then Mr. Mutter would not have suffered injuries as the result of the Defendant's employees' negligence.

36.     As a direct result of the lack of training and supervision of the employees of the Defendant, Mr. Mutter suffered, and will continue to suffer, the following serious and permanent injuries: a grade 1 open mid-shaft fracture of his right femur which tore the vastus lateralis muscle and surrounding muscles; hip and knee pain; a broken interlocking screw; and a six percent (6%) permanent disability of the right lower leg, all of which have required, or will require surgery, extensive hospital and home care, and therapy. In addition, Mr. Mutter has been prevented from transacting his business and his daily affairs; has lost and will continue to lose wages; has suffered and will continue to suffer great pain of body and mind; has incurred and will continue to incur in the future medical, hospital, doctors', therapy and related bills in an

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-11-

effort to be cured of said injuries, has suffered emotional distress and damage to his relationship with his wife, family, and friends.

## COUNT IV
### (Punitive Damages)

37.     The Plaintiff realleges and incorporates herein all allegations set forth in Paragraphs One (1) through Thirty-Six (36) of this Complaint as if set forth in full and in their entirety herein.

38.     The stacking of bags of mulch in unreasonably high piles for sale and display is a nationally recognized safety risk to public invitees and consumers.

39.     The Defendant knew, at the time of this occurrence, that bags of mulch had been stacked in piles that were unreasonably high on their premises, and that said piles of stacked bags presented a known and preventable safety risk to consumers.

40.     Despite the aforementioned knowledge of the safety risk, the Defendant, knowingly and intentionally, stacked bags of mulch for consumer consumption in piles that were unreasonably and dangerously high, thereby creating a known and preventable safety risk to its consumers/invitees.

41.     By knowingly and intentionally allowing bags of mulch to be stacked unreasonably high, the Defendant acted wantonly and oppressively in such a way as evinced a conscious disregard of the safety and rights of its invitees.

WHEREFORE, Mr. Mutter, requests that he be awarded judgment against Defendants, Lowe's Home Centers, LLC, Lowe's Companies, Inc., Lowe's Home Centers, Inc., LF, LLC, Lowe's Home Centers, Inc., #1870, T/A Lowe's of Gainesville, and Lowe's of Gainesville No. 1870, jointly and severally, for the following:

LAW OFFICES OF
PIKRALLIDAS
&
ASSOCIATES
ATTORNEYS AND COUNSELORS
AT LAW
LAWYERS ROW
10605 JUDICIAL DRIVE
BUILDING A-4
FAIRFAX, VIRGINIA 22030
TEL. (703) 267-2600
FAX (703) 273-8046

-12-

a.  Compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

b.  Punitive damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00);

c.  All other sums permissible in Virginia including costs, and pre and post judgment interest as allowed by law and §8.01-382 of the Code of Virginia, effective March 28, 2012;

d.  Such other and further relief as the Court deems just and appropriate under the circumstances;

e.  **MR. MUTTER DEMANDS A JURY TRIAL**

Respectfully submitted,

JOHN MUTTER
By Counsel

**PIKRALLIDAS & ASSOCIATES**
10605 Judicial Drive
Building A-4
Fairfax, VA 22030
TEL:   703-267-2600
FAX:   703-273-8046

By:   Demetrios C. Pikrallidas, Esquire
Virginia State Bar No. 33872
Ryan M. Probasco, Esquire
Virginia State Bar No. 85431
*Counsel for Mr. Mutter*

LAW OFFICES OF PIKRALLIDAS & ASSOCIATES ATTORNEYS AND COUNSELORS AT LAW LAWYERS ROW 10605 JUDICIAL DRIVE BUILDING A-4 FAIRFAX, VIRGINIA 22030 TEL (703) 267-2600 FAX (703) 273-8046

-13-

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF PRINCE WILLIAM

JOHN MUTTER,

                            Plaintiff,

v.                                                  Case No. CL14-1986

LOWE'S HOME CENTERS, LLC,
LOWE'S COMPANIES, INC.,
LOWE'S HOME CENTERS, INC.,
LF, LLC,
LOWE'S HOME CENTERS, INC., #1870
T/A LOWE'S OF GAINESVILLE,
LOWE'S OF GAINESVILLE, No. 1870,

                            Defendants.

### DEMURRER

The Defendants (hereinafter collectively referred to as "Lowe's")[1], by counsel, demur to

Plaintiff's Complaint on the following grounds:

1.      This is a personal injury action in which the plaintiff alleges that he sustained

injuries as a result of Lowe's negligence.  Specifically, the plaintiff alleges that he was injured

when a stack of bags of mulch that had been negligently stacked in an unreasonably high and

dangerous pile fell and struck him.  Compl. ¶ 8.

2.      In Count II of the plaintiff's Complaint, he alleges a claim for *Respondeat*

*Superior* and alleges that Lowe's was responsible for the acts of its employees.  Compl. ¶ 25.

*Respondeat superior* is a theory of liability, not a separate cause of action.  Shaver v. HPB Corp.,

84 Va. Cir. 382, 2012 WL 8697373, at *2 (Va. Cir. Ct. Mar. 19, 2012) (attached as Ex. A); see

also Daud v. Commonwealth, 282 Va. 317, 320, 717 S.E.2d 124, 125 (2011) (describing

---

[1] The only properly named defendant is Lowe's Home Centers, LLC, which is the entity that owns and operates the
subject Lowe's store.

EXHIBIT

B

*respondeat superior* as a "theory of recovery"); Giant, Inc. v. Enger, 257 Va. 513, 516, 515

S.E.2d 111 (1999) (noting that *respondeat superior* is a "doctrine" of employer liability for the

tortious acts of its employees under certain circumstances). The Eastern District of Virginia has

stated that "one cannot bring a claim of '*respondeat superior*,' instead one simply relies on this

theory as a vehicle for imposing on the principal liability for the underlying wrongful acts of the

agent." Newport News Indus. V. Dynamic Testing, 130 F.Supp.2d 745, 752 (E.D.Va. 2001).

Accordingly, Count II should be dismissed with prejudice.

      3.     In paragraphs 33-36 of the Complaint, the plaintiff alleges that the Defendant was

responsible for the training and supervision of its employees, that the Defendant had policies and

procedures to prevent the types of injuries sustained by the plaintiff, and that the plaintiff would

not have sustained injuries if the employees had been properly trained and/or supervised.

      4.     To the extent paragraphs 33-36 allege claims for negligent training and negligent

supervision, Lowe's demurs to those claims on the grounds that Virginia does not recognize such

causes of action. See Chesapeake & Potomac Telephone Co. of Va. v. Dowdy, 235 Va. 55, 61,

365 S.E.2d 751, 754 (1988) (holding that Virginia does not recognize a cause of action for

negligent supervision); Swain v. Chippenham Johnston-Willis Hosp., Inc., 80 Va. Cir. 587, 2010

WL 7372698 (Richmond 2010) (holding that no cause of action exists for negligent supervision);

Banach v. Benton, 74 Va. Cir. 233, 2007 WL 5282562 (Portsmouth 2007);  Williams v. Dowell,

34 Va. Cir. 240, 1994 WL 1031277, *3 (Richmond 1994) (holding that "[r]esearch discloses no

reported decision in Virginia which recognizes [a claim for negligent training]"); Meccia v.

Pioneer Life Ins. Co., 13 Va. Cir. 17, 1987 WL 488659, *6 (Spotsylvania 1987) (declining to

recognize a cause of action because "the 'negligent failure to train', as a separate and distinct

tort, finds little or no support in the authorities") (collectively attached as Ex. B). Accordingly, Count III should be dismissed with prejudice.

5.      In support of his claim for punitive damages, the plaintiff baldly asserts that "[t[he stacking of bags of mulch in unreasonably high piles for sale and display is a nationally recognized safety risk to public invitees and consumers" and that "[b]y knowingly and intentionally allowing bags of mulch to be stacked unreasonably high," Lowe's acted wantonly and oppressively in such a way as to evince a conscious disregard of the safety and rights of its invitees. Compl. ¶ 38, 41.

6.      The plaintiff has failed to state facts sufficient to rise to the level of egregiousness required to sustain a claim for punitive damages. Accordingly, Count IV should be dismissed with prejudice.

7.      WHEREFORE, Lowe's, by counsel, respectfully requests that the Court sustain its Demurrer and dismiss with prejudice the plaintiff's claims for *respondeat superior*, negligent supervision and/or negligent training, and punitive damages, and for any and all other relief the Court deems just and proper.

3

LOWE'S HOME CENTERS, LLC
LOWE'S COMPANIES, INC.
LOWE'S HOME CENTERS, INC.
LF, LLC
LOWE'S HOME CENTERS, INC. #1870 T/A
LOWE'S OF GAINESVILLE
LOWE'S OF GAINESVILLE, No. 1870

By: _____
            Counsel

Joseph M. Moore (VSB #48591)
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA  23218
(804) 344-8300 Telephone
(804) 344-8359 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Demurrer was mailed on this 9th day of April, 2014, to:

Demetrios C. Pikrallidas
Pikrallidas & Associates
10605 Judicial Drive
Building A-4
Fairfax, VA 22030
(703) 267-2600
(703) 273-8046



4

Westlaw.

Not Reported in S.E.2d, 84 Va. Cir. 382, 2012 WL 8697373 (Va.Cir.Ct.)
(Cite as: 2012 WL 8697373 (Va.Cir.Ct.))

Circuit Court of Virginia.
SHAVER
v.
HPB CORP.

No. 2010–152.
March 19, 2012.

T. Vaden Warren, Jr., Esq., The Warren Firm LLC, Charlottesville, VA.

Terry Lynn, Esq., Law Offices of Terry Lynn PLLC, Earlysville, VA.

EDWARD L. HOGSHIRE, Judge.

*1 Dear Counsel,

This personal injury action arose from the purportedly negligent acts of Mr. Roger J. Shepherd and HPB Corporation. The issue before the Court is plaintiff's Motion to Reconsider Plaintiff's Motion for Leave to Amend.

### Procedural History

On July 7, 2011, plaintiff filed a Motion for Leave to Amend her Complaint so as to specifically allow her to plead *respondeat superior.* That motion was denied after the Court found that *respondeat superior* was a new claim and that the statute of limitations had run. Upon motion to reconsider, and having carefully considered the arguments of counsel at the *ore tenus* hearing on February 21, 2012, as well as the pleadings, legal memoranda and additional legal authority introduced by the parties, the Court, upon further reflection, now holds, for reasons set forth below, that *respondeat superior* is not a new cause of action for statute of limitations purposes, but a legal theory of liability; moreover, as leave to amend would be in furtherance of the ends of justice and would not un-

duly prejudice the defendant, the Court will grant plaintiff leave to amend her Complaint so she can plead course and scope of employment.

### Summary of the Facts

The accident giving rise to this lawsuit occurred on May 23, 2006. Plaintiff's original complaint was filed on May 8, 2008 and was later nonsuited on April 9, 2010. The suit was re-filed on April 29, 2010 naming HPB Corporation and Roger Shepherd as defendants and timely claiming negligence. Roger Shepherd was ultimately dismissed with prejudice due to plaintiff's failure to serve him within one year. *See* Va.Code § 8.01–275.1. On July 7, 2011, plaintiff filed a Motion for Leave to Amend her Complaint. A hearing on plaintiff's motion was held on August 28, 2011, and on September 20, 2011, the Court denied plaintiff's Motion for Leave to Amend. Defendant, HPB Corporation, then filed a motion for Summary Judgment premised upon plaintiff's failure to affirmatively plead *respondeat superior* in her complaint. The Court granted that motion on January 17, 2012 after finding that course and scope of employment must be alleged to plead *respondeat superior* liability.

Plaintiff moved to reconsider her Motion for Leave to Amend on January 23, 2012 and argument was held on February 21, 2012.

### Issues Presented

1) Does the statute of limitations apply here to bar plaintiff from filing an amended pleading seeking to add *respondeat superior* as an element of her tort claim?

2) If so, are the conditions set forth in Virginia Code Section 8 .01–6.1 satisfied to allow the amended pleading to relate back to the date of the original pleading for purposes of the statute of limitations?



© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 84 Va. Cir. 382, 2012 WL 8697373 (Va.Cir.Ct.)
(Cite as: 2012 WL 8697373 (Va.Cir.Ct.))

3) If there is no applicable statute of limitations for pleading *respondeat superior* as a distinct cause of action, should this Court grant plaintiff leave to amend?

### Legal Analysis

Amendments are not a matter of right and whether to grant leave to amend "is a matter resting within the sound discretion of the trial court." *Kole v. City of Chesapeake,* 247 Va. 51, 57, 439 S.E.2d 405, 409 (1994). The Supreme Court of Virginia, however, has mandated that "[l]eave to amend shall be liberally granted in furtherance of the ends of justice." Va. Supreme Court Rule 1:8. Claims barred by the applicable statute of limitations, however, may not be asserted through an amended pleading unless such a claim is deemed to have been filed at the earlier date. In this case, if *respondeat superior* is a separate action from the underlying negligence claim, then plaintiff sought to amend her complaint beyond the six-month statute of limitations for recommencing a nonsuited action. *See* Va.Code § 8.01–229(E)(3). She would, therefore, be barred from amending her pleading unless the pleading related back to the original timely claim. *See* Va.Code § 8.01–6.1.

*2 After closer examination at established authority, contrary to the Court's previous ruling, the Court has determined that, "*respondeat superior* is a theory of liability, not a separate cause of action." *Rohrbaugh v. Kreidler,* 71 Va. Cir. 298, 304, 2006 Va. Cir. LEXIS 245, at *14 (Cir. Ct. of Arlington Cty.2006) (italics supplied); *see also Daud v. Commonwealth,* 282 Va. 317, 320, 717 S.E.2d 124, 125 (2011) (describing *respondeat superior* as a "theory of recovery"); *Interim Pers. of Cent. Va. v. Messer,* 263 Va. 435, 440–41, 559 S.E.2d 704 (2002) (contrasting *respondeat superior* as a doctrine of tort liability as opposed to the "tort" of negligent hiring which is a "doctrine of primary liability"); *Giant, Inc. v. Enger,* 257 Va. 513, 516, 515 S.E.2d 111 (1999) (noting that *respondeat superior* is a "doctrine" of employer liability for the tortious acts of its employees under certain circumstances). As a result, the Eastern District of Virginia has stated that:

*Respondeat superior* is not an independent conflicting tort, civil claim or remedy. Rather it is a legal precept that presupposes the existence of an underlying claim and assesses liability not because of the act giving rise to the claim but because of a certain status. Thus, one cannot bring a claim of "*respondeat superior,*" instead one simply relies on this theory as a vehicle for imposing on the principal liability for the underlying wrongful acts of the agent.

*Newport News Indus. v. Dynamic Testing,* 130 F.Supp.2d 745, 752 (E.D.Va.2001) (italics supplied). Since *respondeat superior* is a legal theory of liability, and not an independent claim upon which a legal action is founded, there is no statute of limitations significance to the assertion of *respondeat superior* in an amended pleading.

Therefore, despite the significant amount of time between when the suit was re-filed and when plaintiff made her motion for leave to amend, the Court finds that leave to amend would be in furtherance of the ends of justice. Course and scope of employment must be alleged to plead *respondeat superior, see Butler v. So. States Coop, Inc.,* 270 Va. 459, 466, 620 S.E.2d 768 (2005), and denying leave to amend would prevent plaintiff from asserting a theory of liability. Plaintiff has made no previous amendments and the defendant has received sufficient notice that leave to amend would not cause prejudice to the defendant.

### Conclusion

Based on the foregoing, plaintiff's Motion to Reconsider will be granted. The Court requests that Mr. Warren prepare the Order reflecting the opinion set forth above, circulate it to Ms. Lynn, noting her objections, and submit it to the Court for entry.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 84 Va. Cir. 382, 2012 WL 8697373 (Va.Cir.Ct.)
(Cite as: 2012 WL 8697373 (Va.Cir.Ct.))

    With kind regards I am

    Very truly yours,

    Edward L. Hogshire

Va.Cir.Ct.,2012.
Shaver v. HPB Corp.
Not Reported in S.E.2d, 84 Va. Cir. 382, 2012 WL
8697373 (Va.Cir.Ct.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in S.E.2d, 80 Va. Cir. 587, 2010 WL 7372698 (Va.Cir.Ct.)
**(Cite as: 2010 WL 7372698 (Va.Cir.Ct.))**

C

Circuit Court of Virginia.
Thelma SWAIN
v.
CHIPPENHAM JOHNSTON–WILLIS HOSPITAL,
INC et als.

No. CL09–1775.
July 27, 2010.

Gerald G. Poindexter, Esquire, Gerald G. Poindexter
& Associates, Attorneys at Law, Surry, Virginia.

Anne M. Glenn, Esquire, Goodman, Allen & Filetti,
PLLC, Glen Allen, Virginia.

Coreen A. Silverman, Esquire, Rawls & McNelis, PC,
Richmond, Virginia.

MELVIN R. HUGHES, JR., J.

*1 In this medical malpractice case, the issues
brought on by demurrers of three of the four defend-
ants revolve around vicarious liability, medical neg-
ligence and punitive damages. Plaintiff alleges neg-
ligent post operative care which resulted in severe and
ugly bums or sores on plaintiff's upper legs and thighs
and about her body. Specifically, one of the nurse
defendants demurs to the claim of negligent supervi-
sion and punitive damages, the hospital defendant
demurs to the sufficiency of the Complaint in its al-
legations of medical malpractice and punitive dam-
ages and a doctor defendant demurs to the claims of
negligence as against him based on the neglect of
nurses. The court will resolve the issues under well
known principles governing demurrers. *Glazebrook
v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d
589, 591 (2003).

With regard to negligent supervision, the Court
has said that there "is no duty of reasonable care im-
posed upon an employer in the supervision of its em-
ployees." *Chesapeake and Potomac Telephone Co. v.
Dowdy*, 235 Va. 55, 61 (1988). The nurse, Holloway,
is alleged to have been a supervisor of other nurses
who are said to not have afforded plaintiff adequate
post operative case which resulted in grievous injuries.
As there is no cause of action for negligent supervision
in Virginia, per *Dowdy*, the hospital cannot be held
negligent vicariously on a theory of respondent supe-
rior nor Holloway directly. Thus, the Complaint lacks
legally sufficient facts on which to posit such liability
on that basis. The fact that *Dowdy* arose in the context
of a telephone company defendant sought to be held
liable on the theory of negligent supervision as op-
posed to a medical negligence case, as here, is of no
moment because the court disapproved of the theory
broadly without distinguishing that the claim is not
otherwise prohibited in other negligence cases. The
case otherwise states sufficient facts for placing lia-
bility on the hospital through the negligence of the
named nurses on a theory that their negligence led to
plaintiff's injuries as employees of the defendant hos-
pital.

Next, there are the issues of whether the doctor
defendant can be held personally or vicariously liable
based on the alleged negligence of nurses. He argues
that without a claim that he was in a position of master
or employer, no such liability can be founded. The
pleadings do not allege the doctor acted in either ca-
pacity. Instead, the Complaint alleges "he had a duty
to ensure that the nursing staff took extraordinary
precautions" regarding plaintiff's cleanliness and re-
positioning. The court believes that without an alle-
gation that the doctor was negligent in providing any
instructions with regard to post operative care, in the
selection of such persons for the provision of such care
or that such persons stood in relation to him as serv-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


EXHIBIT
B

Not Reported in S.E.2d, 80 Va. Cir. 587, 2010 WL 7372698 (Va.Cir.Ct.)
**(Cite as: 2010 WL 7372698 (Va.Cir.Ct.))**

ants or employees, the pleading to set liability on the doctor is legally insufficient. Such is the case in the matter at hand. See *Fox v. Mason,* 139 Va. 667, 124 S.E. 405 (1924); *Alger v. Piper, et al.,* Circuit Ct Winchester Case No. 86–L–84 (April 26, 1987).

*2 While the Court finds the Complaint sufficiently pleads that the postoperative care provided by the defendant's hospital's nursing staff violated the applicable standard of care, causing the plaintiff's injuries, it does not establish a sufficient pleading for punitive damages. The court has said that for punitive damages, the "negligence [must be] so willful or wanton as to evince a conscious disregard of the rights of others." *Booth v. Robertson,* 236 Va. 269, 273 (1988). Here, the unpleasantness of plaintiff's injuries and the possibility of amputation had plaintiff's condition gone untreated, are insufficient to evince willful and wanton conduct by the defendants to establish a predicate for punitive damages.

Rather than measuring the adequacy of a claim for punitive damages by the seriousness of a claimed injury, as plaintiff seems to contend, the cases reserve the award of punitive damages to those involving the most egregious conduct. Where the claimed act of omission complained of is "free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment [one of the purposes of punitive damages, as well as a warning to others, *Xspedius Mgmt Co. of Va. L.L.C. v. Stephan,* 269 Va. 421, 425, 611 S.E.2d, 385, 387 (2005) citing *Hamilton Dev. Co. v. Broad Rock Club,* 248 Va 40 at 45, 445 S.E.2d at 143 (1994) ] cannot be awarded and compensatory damages only are permissible." *Xspedius,* 269 Va. 425, 611 S.E.2d at 387 (citing *Bowers v. Westvaco Corp.,* 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992)).

Accordingly, the demurrer as to defendant, Holloway, is sustained and the demurrer as to Chippenham Hospital is sustained in part and overruled in part. Counsel for defendants should confer and prepare an order or orders and submit same for entry with plaintiff's exceptions noted. Plaintiff will be granted leave to amend on or by August 10, 2010, with any responsive pleading due twelve days following receipt.

Very truly yours,

Melvin R. Hughes, Jr.

Va.Cir.Ct.,2010.
Swain v. Chippenham Johnston-Willis Hosp., Inc.
Not Reported in S.E.2d, 80 Va. Cir. 587, 2010 WL 7372698 (Va.Cir.Ct.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in S.E.2d, 74 Va. Cir. 233, 2007 WL 5282562 (Va.Cir.Ct.)
**(Cite as: 2007 WL 5282562 (Va.Cir.Ct.))**

C

Circuit Court of Virginia,
City of Portsmouth.
Stanley BANACH
v.
William BENTON and Rita's Pizza, Inc.

No. CL05–2987.
Oct. 3, 2007.

DEAN W. SWORD, JR., Judge.

*1 This matter is before the Court on the motion of Rita's Pizza, Inc., for partial summary judgment. Paragraphs 6 and 7 of the Motion for Judgment allege theories of liability for "failure to properly train and supervise Benton .... " and "negligent supervision and training [of Benton]." Finding that there is no such cause of action in Virginia, the motion for summary judgment is granted as it relates to this portion of the matter.

This case arises out of an auto accident and alleged personal injury to the plaintiff. Traditional theories of negligence and agency are alleged along with the above matters. Put simply, the plaintiff claims he was struck in the rear while his vehicle was properly stopped. The defendant Benton was engaged in his occupation as a pizza delivery driver for Rita's and thus a claim is made against Rita's under familiar agency rules. While Benton was a duly licensed and insured driver, he apparently has a less than stellar record with the Department of Motor Vehicles and plaintiff seeks to place that evidence before the jury by showing that Rita's has an additional duty to supervise.

Two Virginia Supreme Court cases seem to control. *Chesapeake & Potomac Tel. Co. v. Dowdy,* 235 Va. 55, 61 (1988), notes:

There can be no actionable negligence unless there is a legal duty, a violation of that duty, and a consequent injury.... In Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here.

*J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 208 (1988):

In this opinion, we decide only whether the allegations of negligent hiring ... state a cause of action in Virginia. This is so because appellant failed to submit any authority ... concerning negligent supervision.

For a summary of a number of circuit court cases finding no such cause of action, the Court notes *Stottlemyer v. Ghramm,* 60 Va. Cir. 474, 483–84 (2001).

Va.Cir.Ct.,2007.
Banach v. Benton
Not Reported in S.E.2d, 74 Va. Cir. 233, 2007 WL 5282562 (Va.Cir.Ct.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in S.E.2d, 34 Va. Cir. 240, 1994 WL 1031277 (Va.Cir.Ct.)
**(Cite as: 1994 WL 1031277 (Va.Cir.Ct.))**

C

Circuit Court of Virginia, City of Richmond.
Sonya Y. Williams
v.
Julie S. Dowell, and Pizza Hut of America, Inc.

CASE NO. LX-725-3.
July 25, 1994.

*1 This case came before the court for argument on defendant Pizza Hut of America Inc.'s (Pizza Hut) demurrer. The court has heard arguments and received submissions of the parties, and the matter is now ripe for decision.

T. J. Markow, Judge.

Sonya Y. Williams, Randolph K. Nelson, Jr. and Sherri Hill filed separate motions for judgment against defendants Pizza Hut and Julie S. Dowell. Because the plaintiffs' claims arise from the same factual scenario, the court has consolidated the three cases.

In their motions for judgment plaintiffs allege that on September 2, 1993, Williams, Hill, and Nelson entered a Pizza Hut restaurant located in Richmond, Virginia, to have dinner. At that time, defendant Julie S. Dowell was on duty as a waitress at Pizza Hut. Plaintiffs are black and Dowell is white. Plaintiffs allege that they were denied service solely because of their race. Specifically, they allege that Dowell repeatedly ignored plaintiffs' requests to be seated, sneered at them, and otherwise refused to serve them solely because of their race. Because of Dowell's actions, Williams proceeded to complain to the restaurant's manager. While attempting to complain to the manager, they allege that Dowell stated, "You niggers think you can get away with anything." Dowell then proceeded to attack Williams, stab her

with a pencil, and with great force deliver blows with arms and hands to all parts of her body.

Count I of the motion for judgment purports to state a cause of action against Pizza Hut for racial intimidation and harassment in violation of Va. Code ' 8.01-42.1. Plaintiffs allege that defendant Dowell's actions were motivated by racial animosity and amounted to racial intimidation, harassment, and violence. Plaintiffs allege that Dowell was acting as an agent of Pizza Hut within the scope of her employment, and as such seek to hold Pizza Hut liable for Dowell's alleged violation of Va. Code ' 8.01-42.1 .

Assuming, arguendo, that Dowell's acts constituted "racial intimidation and harassment" in violation of Va. Code ' 8.01-42.1, the issue is whether and under what circumstances Pizza Hut can be held liable for Dowell's actions. Because Va. Code ' 8.01-42.1 does not address the issue of an employer's liability for an employee's violation of the statute, the court looks to common law principles of respondeat superior to resolve this issue.

Under the doctrine of respondeat superior, an employer is liable for the tortious acts of his employee if the employee was performing his employer's business and acting within the scope of employment and in furtherance of the employer's business. McNeill v. Spindler, 191 Va. 685, 694-95 (1958). Generally, an act is considered to be within the scope of employment if:

(1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interests, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 34 Va. Cir. 240, 1994 WL 1031277 (Va.Cir.Ct.)
(Cite as: 1994 WL 1031277 (Va.Cir.Ct.))

external, independent, and personal motive on the part of the [employee] to do the act upon his own account.

*2 Kensington Associates v. West, 234 Va. 430, 432 (1987). Moreover, when the facts establish that an employee's deviation from his employer's business is great and unusual, the court shall determine, as a matter of law, whether the employee was acting in the scope of his employment. Id. at 436.

Applying the foregoing principles, the court finds that Dowell's acts of racial intimidation, harassment, and violence, were such great and unusual deviations from Pizza Hut's business that they cannot as a matter of law be considered as acts undertaken in the scope of employment that would make Pizza Hut liable under Va. Code ' 8.01-42.1. Pizza Hut is in the business of providing food and related services to its customers. Dowell's alleged racial epithet that "You niggers think you can get away with anything" evinces a racial bias that could not have been connected in any way with Pizza Hut's business, much less performed in furtherance of Pizza Hut's business; nor is there any allegation to the contrary. Accordingly, the demurrer to Count I is sustained.

Count II of the motion for judgment alleges that Dowell assaulted and battered Williams. The demurrer asserts that Williams cannot recover against Pizza Hut for Dowell's alleged assault and battery because Dowell's actions were outside the scope of her employment. Where an assault and battery is made by an employee as the result of an argument with a patron, in order to determine whether the assault and battery was within the scope of the employee's employment, one must look to the cause of the argument. Cary v. Hotel Rueger, 195 Va. 980, 985-86 (1954).

Viewing the facts alleged in a light most favorable to plaintiff might support a reasonable inference that Dowell's assault and battery of Williams arose out of Dowell's attempt to perform her waitress duties.

Although Dowell allegedly uttered racial slurs, it can be inferred that the argument between Dowell and Williams which resulted in Dowell allegedly assaulting and battering Williams arose from a dispute concerning Dowell's seating and serving of plaintiffs as restaurant patrons. If that were found to be the fact, Dowell would appear to have been acting within the scope of her employment. The question then would arise whether the assault and battery took place as a natural incident to Pizza Hut's business and were made, albeit ill-advisedly, with a view to further Pizza Hut's interests. Accordingly, the court cannot find as a matter of law that Dowell's alleged assault and battery was motivated by purely personal considerations entirely extraneous to Pizza Hut's business interests. Accordingly, the demurrer to Count II is overruled.

Count III purports to state claims against Pizza Hut for negligent hiring, training, and supervision of its employees by failing to take reasonable steps to prevent acts of racial harassment, intimidation, or violence against its patrons.

*3 Plaintiffs allege that Pizza Hut had a duty to hire persons who would not commit wrongful acts against its patrons. Negligent hiring "conditions liability on the employer's knowledge that the employee's past actions strongly suggest that he is unfit for a job which involves an unreasonable risk of harm to others." Simmons v. Baltimore Orioles, Inc., 712 F.Supp. 79, 81 (W.D. Va. 1989) (citing J. v. Victory Tabernacle Baptist Church, 236 Va. 206 (1988)). In the instant case, plaintiffs fail to allege any facts that Pizza Hut knew or should have known that Dowell would commit the wrongful acts alleged in the motion for judgment. In addition, plaintiffs fail to allege facts to support the proposition that Dowell's job involved an unreasonable risk of harm to others. As such, plaintiffs have not stated a claim for negligent hiring, and Pizza Hut's demurrer is sustained as to this claim.

In addition, plaintiffs allege that Pizza Hut failed to take reasonable steps to supervise its employees to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 34 Va. Cir. 240, 1994 WL 1031277 (Va.Cir.Ct.)
(Cite as: 1994 WL 1031277 (Va.Cir.Ct.))

prevent them from committing various wrongful acts against its patrons. In essence, plaintiffs allege a cause of action based upon a theory of negligent supervision. Virginia's Supreme Court has held that there is no cause of action for the tort of negligent supervision in Virginia. Chesapeake and Potomac Telephone v. Dowdy, 235 Va. 55, 61 (1988). Accordingly, plaintiffs fail to state a cause of action upon which relief can be granted against Pizza Hut based upon a theory of negligent supervision, and Pizza Hut's demurrer is sustained as to this claim.

Finally, plaintiffs allege claims against Pizza Hut for failing to train its employees not to commit various wrongful acts. Research discloses no reported decision in Virginia which recognizes such a tort. However, assuming, arguendo, that Pizza Hut had a duty to train its employees not to commit wrongful acts, the same principles stated in Chesapeake concerning negligent hiring would apply with equal force to the alleged tort of negligent training. Specifically, plaintiffs would have to allege facts to establish that Pizza Hut knew that Dowell's past actions strongly suggested that she was unfit for a job which involved an unreasonably risk of harm to others. As noted above, the motion for judgment fails to make such allegations. Accordingly, plaintiffs have failed to state a cause of action against Pizza Hut based upon a theory of negligent training, and Pizza Hut's demurrer is sustained as to this claim. Thus, the demurrer as to Count III is sustained.

The demurrer as to plaintiffs' claims for attorneys' fees under Counts I and II and punitive damages under Counts I, II, and III has been rendered moot by plaintiffs' motions to nonsuit these claims.

An order consistent with this letter opinion is enclosed, noting exceptions and waiving endorsements.

Va.Cir.Ct. 1994.
Williams v. Dowell

Not Reported in S.E.2d, 34 Va. Cir. 240, 1994 WL 1031277 (Va.Cir.Ct.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

C

Circuit Court of Virginia, Spotsylvania County.
Meccia
v.
Pioneer Life Insurance Company et al

NUMBERS 259-86 AND 239-86 (CONSOLIDAT-
ED).
June 5, 1987.

*1 This case is before the court for rulings on
several pretrial motions, special pleas and demurrers
filed by the defendants.

William H. Ledbetter, Jr., Judge.

Nature of the Case

Plaintiffs (collectively, "Meccia") have filed an
eight-count amended motion for judgment against
Pioneer Life Insurance Company of Illinois ("Pio-
neer") and its agent, Robert F. Berryman ("Berry-
man"), alleging, in essence, that Pioneer has refused to
pay certain medical expenses incurred by Meccia for
treatment of their son's birth defects as it was obliged
to do under a policy of health insurance.

At the time Berryman, the sales agent, met with
Meccia in May of 1985 to sell the coverage and take
the application, Linda Meccia was eight months
pregnant. There seems to be no dispute about Berry-
man's knowledge of this fact. In discovery deposi-
tions, he has conceded that the pregnancy was a topic
of conversation at the meeting and that coverage of the
unborn child was discussed. (Maternity benefits were
not considered.) Nevertheless, Question 4(h) of the
application was answered "No". The question referred
to medical advice or treatment in the past five years.
Meccia says that they interpreted the question to per-

tain to illnesses and injuries, not to the pregnancy, and
that such interpretation was reasonable especially in
light of their conversations with Berryman specifically
concerning the pregnancy and coverage for the unborn
child.

Berryman has stated further in discovery deposi-
tions that he did not know that Pioneer would not write
a policy for a pregnant applicant or an applicant whose
spouse was pregnant. He denies ever receiving certain
guidelines and regulations from Pioneer which ap-
parently address this point with Pioneer's agents.

Meccia claims that shortly after the application
was taken, the child was born with serious birth de-
fects. When the rather substantial medical bills asso-
ciated with these defects were submitted to Pioneer,
Pioneer refused to pay them and rescinded the policy.
By letter dated October 31, 1985, Pioneer notified
Meccia of the rescission (although it subsequently
kept the matter "under review" for several months
without offering further explanation) and cited the
misstatement in response to Question 4(h) of the ap-
plication as its reason for the rescission.

Present Status of the Case

Meccia's eight-count amended motion for judg-
ment asserts the following causes of action:

Count 1. Negligence claim against Berryman.

Count 2. Claim of breach of oral contract against
Pioneer and Berryman.

Count 3. Claim of breach of written contract
against Pioneer.

Count 4. Claim of "bad faith refusal to pay"

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

against Pioneer.

Count 5. Claim under the Virginia Unfair Trade Practices Act against Pioneer and Berryman.

Count 6. Claim of misrepresentation against Pioneer and Berryman.

Count 7. Claim of fraud against Pioneer and Berryman.

Count 8. "Negligent failure to train" claim against Pioneer.

*2 In addition to the motions, pleas and demurrers which are the focus of this opinion, the defendants have filed grounds of defense to the amended motion for judgment.

Pioneer has filed a cross claim against Berryman, and Berryman has answered.

Trial is set for December 17-18, 1987.

The following matters are now before the court for determination.

1. Pioneer's demurrer to Count IV of the amended motion for judgment.

2. Pioneer's and Berryman's demurrers to Count V of the amended motion for judgment.

3. Pioneer's demurrer to Count VIII of the amended motion for judgment.

4. Pioneer's and Berryman's special pleas of the statute of limitation to Count VI and Count VII of the amended motion for judgment.

5. Berryman's demurrer and motion to dismiss as

to Pioneer's cross claim.

These matters will be discussed and disposed of in the same order in which they are listed above.

Demurrer to Count IV

In Count IV of the amended motion for judgment, Meccia sets out a "separate and distinct cause of action" against Pioneer which Meccia labels "Tort of Bad Faith Refusal to Honor First Party Claim". In this count, Meccia assets that Pioneer acted intentionally, willfully and maliciously in its arbitrary and unreasonable refusal to pay the medical claims, and in committing several other enumerated wrongful acts, notwithstanding its "confidential relationship of trust" with the insureds.

A cause of action for bad faith in so-called third party insurance cases has received almost unanimous acceptance throughout the United States. Such a cause of action permits the insured to recover compensation for an excess judgment against him when the insurer, in bad faith, rejects a legitimate settlement offer within policy limits. Virginia is in accord. Aetna Casualty & Surety Company v. Price, 206 Va. 749 (1966).

Recently, the bad faith concept has been extended to so-called first party insurance cases, but not without sharp debate and a decided division of authority. Approximately two dozen states are said to recognize such a cause of action, in one form or another, in first party cases.

There are obvious distinctions between third party bad faith cases and first party bad faith cases. First, third party cases involve liability insurance whereas first party cases involve indemnity insurance. Second, the harm for which a remedy is fashioned by judicial recognition of the cause of action for bad faith in third party cases does not exist in first party cases. In the latter category of cases the issue is not whether

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

the insured will be exposed to damages in excess of policy limits by reason of the insurer's misconduct. Third, although it may be said that a relationship of confidence and trust exists in every contractual arrangement, the "confidence and trust" referred to in the third party cases arises from the insurer's right under the policy to investigate, negotiate and settle claims of third parties against the insured -- a delicate situation. In the third party context, the insured is wholly dependent upon the insurer to see that his best interests are protected in dealing with third party claims, an element not present in first party cases. Finally, the relief provided in third party cases, for the most part, is full judgment for foreseeable losses -- i.e., consequential damages. The basic principle is reimbursement for foreseeable loss resulting from the insurer's breach of duty to settle within policy limits on a claim against the insured. The primary objective in first party cases is not recovery of consequential damages for direct loss, but recovery of exemplary or punitive damages in addition to the amount that can be recovered under a straightforward breach-of-contract claim.

*3 Everyone agrees that Virginia has neither accepted nor rejected a cause of action for bad faith in first party cases.

In Morgan v. American Family Life Assurance Company, 559 F.Supp. 477 (W.D.Va. 1983), Judge Turk speculated that Virginia would recognize such a cause of action. The rationale of the decision is tied, in part, to the court's observation that Virginia does recognize the tort of intentional infliction of emotional distress under certain circumstances, and that these tort causes of action have similar components and policy considerations. In the final analysis, however, Morgan expressly does not hold that Virginia would recognize a cause of action in tort for bad faith failure to pay a first party insurance claim. Nevertheless, inexplicably, the court denied the insurer's pretrial motion to dismiss the claim.

In A & E Supply Company, Inc. v. Nationwide Mutual Insurance Company, 798 F.2d. 669 (4th Cir. 1986), the 4th Circuit Court took a different view, concluding that Virginia would not recognize such a cause of action founded in tort and permitting recovery of punitive damages.

There is no authority -- by way of holdings, dicta or inferences -- that would give one any degree of confidence that the Virginia Supreme Court would recognize a tort theory of recovery based on bad faith refusal in a first party insurance case.

In Price, the Court adopted "the rule imposing liability upon an insurer for an excess judgment against the insured for failure to settle within the policy limits, in proper cases". This case is properly cited for the proposition that Virginia recognizes a cause of action for bad faith in third party insurance cases. The Court's holding, however, is not expansive. The stated purpose of the rule is to compensate an insured where the insurer does not act in good faith in dealing with offers of compromise, "having both its own and the insured's interests in mind". Nothing in the Court's opinion hints at a possible extension of the rule beyond those cases (i.e., third-party insurance cases) to which the "salutary purpose behind the rule" specially applies.

Simply put, this is a contract case. As a general rule, damages for breach of contracts are limited to pecuniary loss. Wright v. Everett, 197 Va. 608 (1956). Exemplary, or punitive, damages are not recoverable even where the breaching party is guided by an evil or hateful motive. Kamlar Corporation v. Haley, 224 Va. 699 (1983). It is not surprising, then, as noted by Professor Prosser (quoted in Kamlar), that lawyers will make the effort "to turn every breach of contract into a tort".

*4 The general rule that punitive damages are not allowed for breach of contract does not obtain in those

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

exceptional cases where the breach also amounts to an independent, willful tort. Wright, supra; Goodstein v. Weinberg, 219 Va. 105 (1978).

Virginia Code '8.01-272 now expressly permits a joinder of counts in tort and contract. Thus, since the statutory change in 1977, lawyers do not have to "turn every breach of contract into a tort". Instead, a single pleading can allege an ex contractu action and an independent willful tort. Since the very object of the first party bad faith theory is an award of punitive damages, it is natural that an indemnity insurance contract case would be framed as an action ex contractu and, in a separate count, the insurer's bad faith refusal to pay would be asserted as an "independent, willful tort".

The analysis does not end, however, with a determination that the insured has complied with the pleading requirements of '8.01-272 and Kamlar by having alleged an independent ex delicto action in a separate count. No matter how separate or independent the ex delicto allegations, if such allegations add up to a tort claim that is not recognized in Virginia, there can be no recovery upon it.

Because Virginia does not recognize a tort action of bad faith refusal to pay in first party indemnity insurance cases, as alleged in Count IV and as defined in the cases from other jurisdictions cited in Meccia's memorandum, Meccia cannot go forward on that claim.

This holding does not preclude recovery of consequential and/or punitive damages by an insured in an indemnity insurance contract case where an identifiable, cognizable independent tort is properly pleaded and proved. It may be, for instance, that Meccia can frame a clearly-delineated, cognizable "independent, willful tort" using some of the allegations contained in Count IV, without resorting to an unfounded reliance upon the broader theory of recovery known as bad

faith. If such allegations state a tort cause of action recognized in the Commonwealth, they will withstand demurrer.

For the reasons given, Pioneer's demurrer to Count IV will be sustained, with leave for Meccia to amend if they be so advised.

Demurrers to Count V

In Count V of the amended motion for judgment,, Meccia asserts a claim against Pioneer and Berryman under the provisions of Virginia Code '38.1-49 et. seq. (now '38.2-500 et. seq.), the Virginia Unfair Trade Practices Act.

The question is whether such regulatory legislation carries with it an implied private right of action.

The original legislation was silent on this issue. In 1986, the Act was rewritten to specifically provide that "no violation of this Act shall of itself be deemed to create any cause of action in favor of any person other than the Commissioner [of Insurance]..." Virginia Code '38.2-510(B). However, since this case was commenced prior to the enactment of ' 38.2-510 (B), the original form of the Act controls.

*5 Meccia argues that since the General Assembly decided to expressly exclude private actions by the 1986 revision, "it is logical to conclude that in its original form the statute impliedly authorized a private right of action."

In Morgan, supra, the U. S. District Court for the Western District of Virginia held that the Virginia General Assembly intended an implied private right of action in favor of insureds under the pre-1986 version of the Act. The court found its strongest indication of such legislative intent in the Act's declaration of purpose, or preamble. The court relied heavily upon a 1981 West Virginia decision which judicially implied

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

a private right of action under similar legislation in that state.

A & E Supply, supra, reaches a different conclusion. The rationale and holding of that case are more persuasive.

The Virginia legislation is based on a model statute drafted by the National Association of Insurance Commissioners. The Act forbids various insurance practices and delegates regulatory powers to the State Corporation Commission. The Commission, acting largely through the Insurance Commissioner, may promulgate rules, conduct investigations, issue cease and desist orders, conduct hearings, and impose sanctions. The Act is a part of the insurance code which fills more than 400 pages.

As noted by the 4th Circuit in A & E Supply, the delicate balance within the statutory complex

"would likely be disrupted by the introduction of...courts as decision-makers affecting only one dimension of interrelated insurance problems. * * * The discordant effects of independent -- and often inexpert -- supervision of unfair trade practices by the jury encourages acceptance of the explicit statutory remedy as the exclusive statutory remedy. * * * As one commentator has advised, •if the legislature has carefully chosen an enforcement mechanism to accomplish the legislative purpose by accommodating conflicting interests, the integrity of the overall statutory scheme requires restraint in implying private actions'."

Most states that have adopted the model statute hold that it does not create a private right of action.

In Virginia, where the legislature has chosen an enforcement mechanism and regulatory scheme to accomplish an announced purpose, the judiciary will not add a regime of private lawsuits to the specified mode of executing such purpose, especially where the regulatory scheme is complex, the administrative mechanisms are in place, and there is nothing in the legislation itself that expressly authorizes or reasonably implies a private right of action.

Accordingly, the court is of the opinion that Count V does not state a cause of action upon which relief can be granted, and the demurrers to that count will be sustained.

*6 Demurrer to Count VIII

Count VIII is labelled "Negligent Failure to Train". In it, Meccia alleges that Berryman was acting within the scope of his agency relationship with Pioneer at all times relevant to the claim. Then, Meccia adds: "In the event that Pioneer is not legally responsible for the actions of its agent, ... any misrepresentations made by Berryman, whether intentional or unintentional, were made as a result of the negligent failure to train Berryman by Pioneer...."

Pioneer has demurred, alleging that the allegations in Count VIII fail to state a claim upon which relief can be granted.

Once again, the court is invited to recognize a novel theory of recovery sounding in tort. Unlike the bad faith refusal in Count IV, however, the "negligent failure to train", as a separate and distinct tort, finds little or no support in the authorities. Meccia cites '315 of the Restatement of Torts (Second). That provision is not supportive of the proposition that "negligent failure to train" is a distinct cause of action. Instead, it defines the duty owed by a principal, or similar party, to control its agent or similarly situated party where a special relationship exists to justify the imposition of such duty. This court reads the section as simply clarifying one facet of the doctrine of respondeat superior under which a principal may be held vicariously liable for the acts of its agent. Similarly, Robertson v.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

LeMaster, 301 S.E.2d 563 (W.Va. 1983), also relied upon by Meccia, can be so construed. Although in Robertson the employee may not have been acting within the scope of his employment at the time of the accident, the West Virginia court seems to be clarifying, or extending, the duty of the principal toward third parties rather than creating a new cause of action.

In any event, Robertson rationale is inapposite here. Undeniably, Berryman committed the acts for which Pioneer can be held liable during "on-duty service", and within the scope of his agency, or not at all. It follows that Pioneer is either vicariously liable under the doctrine of respondeat superior for such alleged misconduct of Berryman, or it is not liable at all for the alleged acts of Berryman.

Therefore, Pioneer's demurrer to Count VIII will be sustained.

Special Pleas of the Statute of Limitation

Pioneer and Berryman have filed special pleas of the statute of limitation to Counts VI and VII. In these counts, Meccia alleges that the defendants made numerous material misrepresentations "regarding the scope of coverage and insurability of Meccia".

An action for fraud is governed by the one-year statute of limitation in Virginia Code '8.01-248. Pigott v. Morgan, 231 Va. 76 (1986). (The parties agree that this statute controls both Count VI and Count VII, although Count VI is labelled "Tort of Misrepresentation.") The cause of action accrues "when such fraud ... is discovered or by the exercise of due diligence reasonably should have been discovered". Virginia Code '8.01-249. The crucial question is the date on which the cause of action accrued.

*7 In oral argument, Pioneer temporarily withdrew from the debate by conceding that there is not sufficient evidence before the court from which the accrual date can be determined at this point. Berryman has made no such concession, and argues that Meccia's cause of action for fraud accrued, at the latest, on October 31, 1985.

On that date, Pioneer wrote to Meccia rescinding the policy and returning all premiums paid. [A copy of the letter is appended to Meccia's memorandum filed herein on May 15, 1987.] The letter is so clear and specific, Berryman asserts, that Meccia discovered the fraud upon receipt of the letter, and all other inquiries and correspondence were nothing more than attempts to confirm or verify the fraud. These verification efforts, Berryman says, do not extend the accrual date under the Pigott analysis.

Since the letter of October 31, 1985, is the pertinent discovery vehicle according to Berryman, what in fact did Meccia discover upon receipt of that letter? From the four corners of the document, Meccia learned that (1) Pioneer was rescinding the policy; (2) no claims would be honored; (3) the basis of the rescission was the alleged misstatement in response to Question 4(h); and (4) more specific reasons for the rescission would be provided upon request.

Can it be said at this point in the litigation, as a matter of law, that Meccia's awareness of these assertions by Pioneer constituted a discovery of fraud on the part of Berryman?

The court is not prepared, at least at this stage of the case, to make such a leap. In other words, on the record thus far developed, it cannot be said that Meccia's discovery of Pioneer's rescission of October 31, 1985, also amounted to discovery of Berryman's alleged fraud.

For the foregoing reasons, the pleas of the statute of limitation are overruled.

Demurrer and Motion to Dismiss Cross Claim

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)
(Cite as: 1987 WL 488659 (Va.Cir.Ct.))

On May 14, 1987, the court granted leave to Pioneer to file a cross claim against Berryman on the amended motion for judgment. Pioneer filed its cross claim on the same day. Berryman has filed a demurrer and, by letter dated June 2, 1987, has invited the court to rule on the demurrer without further hearing on the matter.

The cross claim prays for judgment for such amount, if any, as Meccia may recover against Pioneer. The cross claim is bottomed upon Berryman's duties of good faith, loyalty and full disclosure owed to Pioneer by reason of an agreement between the parties dated November 14, 1984 [a copy of which is attached to the cross claim], and the business relationship between the parties. Berryman claims that these allegations are too imprecise and insufficient.

The court does not agree. The cross claim contains factual allegations asserting claims under the agreement, which is clearly an agency contract, and under "the law applicable to the business relationship", which clearly refers to the agency relationship between Pioneer and Berryman.

*8 Berryman claims that Pioneer's allegations relating to an agency relationship are inconsistent with Pioneer's denial of agency in its grounds of defense. Such inconsistency, or alternative pleading, does not perforce give rise to the basis for a demurrer.

Berryman next contends that Pioneer's cross claim does not sufficiently identify "the applicable law" under which Berryman's alleged duties arise. As noted above, it is evident that the legal principles referred to in the cross claim are those principles applicable to the contract and to the agency relationship. In any event, affirmative pleadings are not demurrable on the basis that the legal principles underlying the action are not recited.

Pleadings are supposed to state the essential facts, not conclusions or legal principles; and the factual allegations must be sufficient to state a claim upon which, if proven to be true, relief can be granted. Brevity is encouraged. Rule 1:4. All sorts of discovery mechanisms are available to compel the party to amplify or particularize the claim.

Therefore, Berryman's demurrer to the cross claim filed by Pioneer will be overruled, with leave to Berryman to file an appropriate responsive pleading.

Conclusion

Pioneer's demurrer to Count IV (bad faith refusal to pay first party claim), Pioneer's and Berryman's demurrers to Count V (Virginia Unfair Trade Practices Act), and Pioneer's demurrer to Count VIII (negligent failure to train) are sustained. Pioneer's and Berryman's pleas of the statute of limitations to Count VI and Count VII are overruled. Berryman's demurrer and motion to dismiss the cross claim are overruled. Meccia will be granted leave to file an amended Count IV, consistent with this opinion, within 21 days of entry of the order, if they be so advised. Berryman will file his responsive pleading within 21 days of entry of the order. Mr. Mathews will please prepare and circulate a sketch order.

Va.Cir.Ct. 1987.
Meccia v. Pioneer Life Ins. Co.
Not Reported in S.E.2d, 13 Va. Cir. 17, 1987 WL 488659 (Va.Cir.Ct.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF PRINCE WILLIAM

JOHN MUTTER,

        Plaintiff,

v.

                                    Case No. CL14-1986

LOWE'S HOME CENTERS, LLC,
LOWE'S COMPANIES, INC.,
LOWE'S HOME CENTERS, INC.,
LF, LLC,
LOWE'S HOME CENTERS, INC., #1870
T/A LOWE'S OF GAINESVILLE,
LOWE'S OF GAINESVILLE, No. 1870,

        Defendants.

## ANSWER

The Defendants (hereinafter collectively referred to as "Lowe's")[1], by counsel, state as follows for their Answer to Plaintiff's Complaint:

1.    Lowe's is without sufficient information to either admit or deny the allegations contained in paragraph 1 of Plaintiff's Complaint.

2.    Lowe's admits that Lowe's Home Centers, LLC is a North Carolina Limited Liability Company that transacts business in the Commonwealth of Virginia and that Lowe's Companies, Inc. is a North Carolina corporation, and that LF, LLC is a Delaware Limited Liability Company, and that Lowe's Home Centers, Inc. is a defunct corporation that was incorporated in North Carolina. Lowe's also admits that it operates Lowe's store No. 1870 in Gainesville,

---

[1] The only proper Lowe's entity to be named in this lawsuit is Lowe's Home Centers, LLC, which is the owner and operator of the subject Lowe's store. The other named entities are either fictitious names, defunct corporations or not involved in the ownership and operation of the subject store.

EXHIBIT
C

Virginia. Lowe's denies any and all other allegations contained in paragraph 2 of Plaintiff's Complaint.

3.     Lowe's admits that Lowe's Home Centers, LLC operates Lowe's store No. 1870 located at 13000 Gateway Center Drive, Gainesville, Virginia 20155. Lowe's denies any and all other allegations contained in paragraph 3 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

4.     Paragraph 4 calls for legal conclusions to which no response is required. To the extent a response is required, Lowe's does not contest the jurisdiction of this Court. Lowe's denies any and all other allegations contained in paragraph 4 of Plaintiff's Complaint.

5.     Paragraph 5 calls for legal conclusions to which no response is required. To the extent a response is required, Lowe's does not contest that venue is proper in this Court. Lowe's denies any and all other allegations contained in paragraph 5 of Plaintiff's Complaint.

## BACKGROUND FACTS

6.     Lowe's admits that John Mutter was present at store #1870 in Gainesville, Virginia on March 28, 2012 at approximately 12:45 p.m. Lowe's denies any and all other allegations contained in paragraph 6 of Plaintiff's Complaint.

7.     Lowe's is without sufficient information to either admit or deny the allegations contained in paragraph 7 of Plaintiff's Complaint and, therefore, denies the allegations.

8.     Lowe's denies the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.     Lowe's is without sufficient information to either admit or deny the allegations contained in paragraph 9 of Plaintiff's Complaint and, therefore, denies the allegations.

2

10.     Lowe's admits that 911 was called and an ambulance came to the store. Lowe's is without sufficient information to either admit or deny the remaining allegations contained in paragraph 10 of Plaintiff's Complaint.

11.     Lowe's denies the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Lowe's denies the allegations contained in paragraph 12 of Plaintiff's Complaint.

### COUNT I (Negligence)

13.     Lowe's incorporates herein by reference its responses to paragraphs 1 to 12 of Plaintiff's Complaint as if fully stated herein.

14.     Lowe's admits that Lowe's Home Centers, LLC owns and operates Lowe's retail store No. 1870 located at 13000 Gateway Center Drive, Gainesville, Virginia 20155. Lowe's denies any and all other allegations contained in paragraph 14 of Plaintiff's Complaint.

15.     Paragraph 15 calls for legal conclusions to which no response is required. To the extent a response is required, Lowe's admits that John Mutter was present on the premises of Lowe's store No. 1870 on March 28, 2012. Lowe's denies any and all other allegations contained in paragraph 15 of Plaintiff's Complaint.

16.     Paragraph 16 calls for legal conclusions to which no response is required. To the extent a response is required, Lowe's denies the allegations contained in paragraph 16 of Plaintiff's Complaint.

17.     Paragraph 17 calls for legal conclusions to which no response is required and does not contain specific allegations related to specific employees. To the extent a response is required, Lowe's is without sufficient information to either admit or deny the allegations contained in paragraph 17 of Plaintiff's Complaint and, therefore, denies.

3

18.     Paragraph 18 calls for legal conclusions to which no response is required.  To the extent a response is required, Lowe's denies the allegations in paragraph 18 of Plaintiff's Complaint.

19.     Lowe's denies the allegations in paragraph 19 of Plaintiff's Complaint.

20.     Lowe's denies the allegations in paragraph 20 and subparagraphs (a.) to (j.) of paragraph 20 of Plaintiff's Complaint.

21.     Lowe's denies the allegations in paragraph 21 of Plaintiff's Complaint.

22.     Lowe's denies the allegations in paragraph 22 of Plaintiff's Complaint.

### COUNT II – Respondeat Superior

23.     Lowe's incorporates herein by reference its responses to paragraphs 1 to 22 of Plaintiff's Complaint as if fully stated herein.

24.     Lowe's admits that Lowe's Home Centers, LLC employs individuals to work at the Lowe's retail store located at 13000 Gateway Center Drive, Gainesville, Virginia.  Lowe's denies any and all other allegations contained in paragraph 24 of Plaintiff's Complaint.

25.     Paragraph 25 calls for legal conclusions to which no response is required and does not contain specific allegations related to specific employees.  To the extent a response is required, Lowe's is without sufficient information to either admit or deny the allegations contained in paragraph 25 of Plaintiff's Complaint and, therefore, denies.

26.     Lowe's denies the allegations in paragraph 26 of Plaintiff's Complaint.

27.     Lowe's denies the allegations in paragraph 27 of Plaintiff's Complaint.

28.     Lowe's denies the allegations in paragraph 28 and subparagraphs (a.) to (j.) of paragraph 28 of Plaintiff's Complaint.

29.     Lowe's denies the allegations in paragraph 29 of Plaintiff's Complaint.

4

30. Lowe's denies the allegations in paragraph 30 of Plaintiff's Complaint.

31. Lowe's denies the allegations in paragraph 31 of Plaintiff's Complaint.

### COUNT III (Negligent Training and Supervision)

32. Lowe's incorporates herein by reference its responses to paragraphs 1 to 31 of Plaintiff's Complaint as if fully stated herein.

33. Lowe's admits that it trains and supervises its employees. Lowe's denies any and all other allegations contained in paragraph 33 of Plaintiff's Complaint.

34. Lowe's denies the allegations contained in paragraph 34 of Plaintiff's Complaint.

35. Lowe's denies the allegations in paragraph 35 of Plaintiff's Complaint.

36. Lowe's denies the allegations in paragraph 36 of Plaintiff's Complaint.

### COUNT IV (Punitive Damages)

37. Lowe's incorporates herein by reference its responses to paragraphs 1 to 36 of Plaintiff's Complaint as if fully stated herein.

38. Lowe's denies the allegations in paragraph 38 of Plaintiff's Complaint.

39. Lowe's denies the allegations in paragraph 39 of Plaintiff's Complaint.

40. Lowe's denies the allegations in paragraph 40 of Plaintiff's Complaint.

41. Lowe's denies the allegations in paragraph 41 of Plaintiff's Complaint.

### AFFIRMATIVE DEFENSES

42. Lowe's denies all allegations not expressly admitted herein.

43. Any damages complained of by Plaintiff were caused by the actions of another or others, including but not limited to the actions of Plaintiff over whom Lowe's had no control.

44. Plaintiff assumed the risk of the incident and/or any injuries or damages he incurred.

5

45.    Plaintiff was contributorily negligent and his negligence was a proximate cause of the accident.

46.    Lowe's denies that Plaintiff was injured or damaged to the extent and/or in the amount claimed.

47.    Plaintiff failed to mitigate his alleged damages and losses.

48.    Lowe's denies that it is indebted to Plaintiff in any manner or for any amount.

49.    Lowe's avers that it will rely upon all affirmative defenses which it may be afforded and as may be supported by evidence adduced at trial, through discovery, or otherwise.

50.    Lowe's reserves the right to assert at trial any and all properly provable defenses it may have to this action and further reserves the right to amend its Answer accordingly if it be so advised.

51.    Plaintiff has failed to state causes of action in the Complaint.

TRIAL BY JURY IS REQUESTED.

LOWE'S HOME CENTERS, LLC
LOWE'S COMPANIES, INC.
LOWE'S HOME CENTERS, INC.
LF, LLC
LOWE'S HOME CENTERS, INC. #1870 T/A
LOWE'S OF GAINESVILLE
LOWE'S OF GAINESVILLE, No. 1870

By: _____
          Counsel

Joseph M. Moore (VSB #48591)
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218
(804) 344-8300 Telephone
(804) 344-8359 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Answer was mailed on this ___

day of April, 2014, to:

Demetrios C. Pikrallidas
Pikrallidas & Associates
10605 Judicial Drive
Building A-4
Fairfax, VA 22030
(703) 267-2600
(703) 273-8046



7